## LESSEE OF JOHN, SAMUEL, AND BENJAMIN COMB, JR., v. RICHARD ROE and BENJAMIN COMB, Sr., Administrator.

Court of Common Pleas. Kent. May 15, 1797.

*Rodney's Notes.**

*Bayard* [for plaintiffs]. *Ridgely* [for defendants].

June 2, 1794. Warrant for 106 acres to plaintiffs.

December 16, 1794 for 101.67 perches of [land] surveyed by George McCall.

October 22, 1795. Patent for 101 acres 57 p. to plaintiffs as tenants in common.

George McCall, surveyor, sworn. Benjamin Comb, the elder, is in possession and made some improvements on it, does not live on it.

*Bayard.* Our title is under the patent. The other party contends that the land was not vacant. That is the question for you to determine.

*Ridgely.* We claim under Samuel Johns from him to his heirs to Warner Mifflin to Benjamin Comb, Sr.

L. W. Wilson. I delivered this paper to Warner Mifflin. I found it among one Stephens' papers lodged in the recorder's office in 1779. Brought from Winchester by John Cook. Among them are a number relative to lands in this county.

William Killen, sworn. I know Stevenson's handwriting. He acted as surveyor for this county. This plot I made for Samuel Johns three months after my appointment, December 13, 1749. I think he was with me. I made at his request to try his lines. I made a survey for Matthew Garrett after Johns' death December 14, 1759, in pursuance of a warrant adjoining lands of Johns.

---

* This case is also reported in *Bayard's Notebook, 196.* Variant spellings of proper names appearing in this case are retained.

I have heard Garrett and Johns had some dispute about their lands in his lifetime. Garrett's lines call for a tract called the Cave. When I [ran] those lines I found the boundaries of those lands by tracing the lines as given me by Johns who said they came from Mr. Galway to him. Mr. Dickinson is said to be the owner or part owner of the tract called the Cave. Johns died sometime in 1757, left issue two daughters (and a son which died young). Warner Mifflin married one, and Richard Holliday the other. Charles Hillyard married the widow. If I had surveyed by virtue of a warrant, I should have taken notice of it on the plot. The Secretary of the Land Office told me I might run, bound, and return a survey of land, and then he would grant warrants agreeably. Land Office was shut between the years 1720 and 1730 when Hugh Durborrow surveyed a number of tracts, and people improved or possessed them, and the court after confirmed their title.

October 22, 1759. Warrant to survey a hundred for Matthew Garrat adjoining lands of Samuel Johns, etc., directed to N. Scull, Surveyor General.

*Bayard.* Objection to admitting survey of lands under the above warrant.

*Ridgely* says the limitation is laid down on the plot in this cause in the same manner, and we do not wish to give evidence of any part of said survey, that is not laid down on plot, on which terms the court admit the survey.

July 21, 1769. Richard Hollyday and Ann his wife to Warren Mifflin, £850 for [——][1] and half of a tract called Johns's Purchase bound by a tract called Cave. Matthew Garratt's land.

June 18, 1791. Deed from W. M. and wife to Benjamin Comb for the land now in dispute with a covenant to warrant and defend the same.

May 22, 1777. Deed from Wilson Garret to Benjamin Comb.

Robert Cavender, about 46 years old. Warner Mifflin was in possession 30 years ago. My father rented of him, etc.

Jonathan Campbell. I have known the land since I was a boy, am 44 years old. My father's land joined it. John Greer now owns where my father did. Cavender's father lived on it under Wilson when I first knew it. Mifflin was there and had it surveyed about 30 years ago. I knew the boundary near the sprout of the branch. It was a hollow oak. I knew the land called Garrett's Land. Mr. Comb now possesses that land. Cavender

[1] Blank in manuscript.

lived in log house near half a mile from the oak. Two or three acres cleared bore east northerly from the oak. Comb doesn't live on it, but has cleared and enclosed a part of it.

*Mr. Bayard.* Title of plaintiff perfected under the law of this state. Warrant and survey under Pennsylvania considered good title without patent until paid for, but warrant and survey is not good, nor so considered under any other person. Whatever lands were not granted by Pennsylvania when independence was declared, the State have assumed a right to grant. [2] Del.Laws [1160], Land Office Law.

*Bayard.* The question now is whether the lands were granted to Samuel Johns. The defendants mean to make use of a warrant to Matthew Garrett bounded by land of Berry, and Johns, in 1759. Possession of vacant land will not give title no matter for how long. Limitation will not run against the State. [2] Del. Laws [1160 s. 3], preference given to settlers of land etc., June, 1793 passed. From October 1 to April 1, they might have come in within that time; if they did not any other person might.

*Ridgely.* In 1791 Benjamin Comb purchased these lands of Warner Mifflin, got possession. He or his sons were only entitled to take out warrants. Warner Mifflin could not do it. He sold them for £158 to Comb, had been in possession of those lands 47 years. 2 Salk. 421. *A* has lands in possession twenty [years] is sufficient to maintain ejectment. Possession of Warner Mifflin is the possession of B. Comb. Coop.Eq.Pl. 218. No right or prerogative of the State to be used by individuals. The law which the gentleman reads says the Proprietaries were no more than pretended, but as soon as the state supersedes them then [they are] the absolute proprietor or lord paramount of the soil, and limitation is not to run against them. Where lands escheat, and the State grants them again, will it be said possession would not have run against the deceased person or individual from whom they escheated? Proprietors were private individuals and were not clothed with the power or prerogative of sovereigns. They held their lands by purchase, under the deed of feoffment from the Duke of York in 1682, who was a subject. If a person enters into land belonging to the King in England, ejectment is not brought, but a writ of intrusion; when the King grants it to an individual it is otherwise, for the prerogative does not follow an individual. Runn. Eject. 62. The State had no interest in this land, but had granted a long time ago (20 years against individual and 60 years is enough against the King). 12 Vin.Abr. 50, 52. A jury may find a thing on presumption, but a court is only to take notice of matter of record. 12 Vin.Abr. 58. An Act of

Parliament was presumed. Gilb. 27. Surrender presumed. Possession, 46, it was presumed a conveyance had been made. 4 Term 468. Legal or legitimate marriage presumed. In *Dickerson v. Penrose,* a grant was found after trial. Though the trial had been depending ten years and searches made by Dickinson for the same to no effect, warrant to M. Garrett located by Proprietary's officers.

*Bayard.* The witnesses speak of thirty years' possession only. By the Charter of William Penn, he granted and the planters accepted many and great privileges, such as no private individual could grant. I do contend that limitation will not run against Proprietary. They have produced a warrant for lands adjoining. Why not the warrant for the lands in question? Grants in England [were] different from our warrants. They were not recorded but in the packets of the grantors warrants by Act of Assembly are to be retained and recorded. Lord Mansfield says all evidence is according to the subject matter of the case.

CHIEF JUSTICE. Plaintiff claims under the State by patent, etc. Defendants say, first from their length of possession, 47 years, the proprietors are barred by Statute of Limitation, which the Court think is not well found; second, that the length of possession together with the written and parol testimony may warrant you in presuming a warrant to have existed. On this point if the evidence should satisfy you that a warrant did issue to Samuel Johns or some other person for this land you may presume it.

Verdict for defendant.

The jury went out Monday night, 10 o'clock, came down at three in morning, delivered a sealed verdict. We find a special verdict for plaintiff. Sent up at 10 o'clock next morning, came down at 1 o'clock, and found for defendant.